**No. 24-6629**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

Public Interest Legal Foundation,
*Plaintiff-Appellant*

v.

SCOTT T. NAGO, in is official capacity as the
Chief Election Officer for the State of Hawaii,
*Defendant-Appellee.*

On Appeal from the United States District Court for the District of Hawaii
No. 1:23-cv-00389-LEK-WRP  Hon. Leslie E. Kobayashi

---

## APPELLANT'S OPENING BRIEF

---

Joseph M. Nixon (Texas Bar #15244800)
(Federal Bar #1319)
Noel H. Johnson (Wisconsin Bar #1068004)
Maureen Riordan* (New York Bar # 2058840)
PUBLIC INTEREST LEGAL FOUNDATION, INC.
107 S. West Street Suite 700
Alexandria, Virginia 22314
(703) 745-5870
njohnson@PublicInterestLegal.org
mriordan@PublicInterestLegal.org
jnixon@publicinterestlegal.org
*Motion application for admission forthcoming

*Attorneys for Appellant*
  *Public Interest Legal Foundation*

Appellant Requests Oral Argument

## DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1, counsel for Plaintiff-Appellant Public interest Legal Foundation, Inc. certifies that no party to this appeal is a subsidiary or affiliate of any publicly owned corporation not named in the appeal and no publicly owned corporation or its affiliate, not a party to this appeal, has a substantial financial interest in the outcome of this litigation.

Date:  February 21, 2025

*/s/* Joseph M. Nixon
Joseph M. Nixon

Counsel for Public Interest Legal Foundation

i

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ....................................................................i

TABLE OF CONTENTS .......................................................................... ii

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT .........................................................3

ISSUE(S) PRESENTED ..........................................................................4

STATEMENT OF THE CASE .................................................................5

SUMMARY OF THE ARGUMENT.....................................................10

STANDARD OF REVIEW ...................................................................11

ARGUMENT .........................................................................................11

   I.   The Foundation Has Standing. ....................................................11

   II.  The Facts Supporting Ripeness Are Not Disputed........................14

   III.   The Foundation's Claims Are Ripe..............................................15

   IV.   The NVRA Preempts Hawaii's Election Laws...........................16

     A.  The NVRA Preempts Hawaii's Piecemeal Production of its Statewide Voter File. ..................................................................................18

     B.  The NVRA Preempts Hawaii's Use Restrictions. .....................20

CONCLUSION......................................................................................21

# TABLE OF AUTHORITIES

**CASES**

*Arizona v. Inter Tribal Council of Arizona,* 570 U.S. 1 (2013)………………...15

*Dodd v. Hood River County*, 59 F.3d 852 (9th Cir. 1995)…………………………9

*English v. Gen. Elec. Co.* 496 U.S. 72 (1990)……………………………………17

*Ex parte Siebold*, 100 U.S. 371 (1880)……………………………………………15

*FEC v. Akins*, 524 U.S. 11 (1998)……………………………………………...11

*Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F. 4th 826 (9th Cir. 2021) 10, 11

*Judicial Watch, Inc. v Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019)…………...18

*Judicial Watch, Inc. v. King*, 993 F .Supp. 2d 919 (S.D. Ind. 2012)…………...12

*Oneok, Inc. v Learjet, Inc.*, 575 U.S. 373 (2015)…………………………………17

*Pizzuto v. Tewalt*, 997 F.3d 893 (9th Cir. 2021)…………………………………9

*Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36 (1st Cir. 2024)……………...passim

*Pub. Int. Legal Found. v. Bennett*, No. H-18-0981, 2019 U.S. LEXIS 39723 (S.D. Tex. Feb. 6, 2019)……………………………………………………………12

*Pub. Int. Legal Found., Inc. v. Bennett*, No 4:18-cv-00981, 2019 U.S. Dist. LEXIS 38686 (S.D. Tex., Mar. 11, 2019)…………………………………………12

*Public Citizen v. United States Department of Justice*, 491 U.S. 440 (1989)...10, 11

*Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F. 3d 411 (9th Cir. 2020)…………………………………………………………………..12

*Twitter, Inc. v. Paxton,* 56 F.4th 1170 (9th Cir. 2022)……………………………...9

**STATUTES**

28 U.S.C. § 1291…………………………………………………………………...3

28 U.S.C. § 1331…………………………………………………………………...3

iii

52 U.S.C. § 20501 *et seq*……………………………………………………..1

52 U.S.C. §20501(b)……………………………………………………...1,3

52 U.S.C. § 20501(b)(3)-(4)……………………………………………..1

52 U.S.C. § 20507(i)……………………………………………………13

52 U.S.C. § 20507(i)(1)……………………………………………passim

52 U.S.C. § 20510(b)……………………………………………………1, 9

52 U.S.C. § 21083………………………………………………………...17

52 U.S.C. § 21083(a)(1)(A)……………………………………………4, 7, 17

Haw. Code R. § 3-177-51………………………………………………16

Haw. Code R. § 3-177-160……………………………………2, 4, 5, 6

Haw. Code R. § 3-177-160(e)……………………………………...18, 19

Haw. Rev. Stat. § 11-2……………………………………………...10, 17

Haw. Rev. Stat. § 11-11………………………………………………3

Haw. Rev. Stat. § 11-14……………………………………………2,4

Haw. Rev. Stat. § 11-15……………………………………………2,4

Haw. Rev. Stat. § 11-17……………………………………………2,4

Haw. Rev. Stat. § 11-97……………………………………………2,4

Haw. Rev. Stat. § 11-97(d)……………………………………………8

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I § 4, cl.1………………………………………………15

## INTRODUCTION

This case presents the simple question of whether a state election official must comply with the plain statutory terms of the National Voter Registration Act requiring records they possess to be disclosed. 52 U.S.C. § 20501 *et seq*, ("NVRA") The explicit Congressional purposes of the NVRA were to "protect the integrity of the electoral process" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4). To accomplish these purposes, Congress created the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1), a broad and powerful federal open records law, and a private right of action, 52 U.S.C. § 20510(b). These two components serve vital oversight and enforcement functions, which ultimately promote all the NVRA's purposes, 52 U.S.C. § 20501(b). In short, Congress intended maintenance of state voter rolls to be transparent because oversight and accountability safeguard the right to vote.

The question presented here, therefore, is when is a NVRA claim ripe. Mr. Nago, Hawaii's Chief Election Officer, elected to not produce a copy of Hawaii's eligible voter list ("Voter File") to the Public Interest Legal Foundation, Inc., (the "Foundation") within ninety days of receiving the notice to cure letter. Is more required to ripen a claim? Mr. Nago argues that a party seeking records that are subject to disclosure under the NVRA must first request a subset of those records from third parties under state procedures before a claim is ripe.

1

No such requirement to comply with an arbitrary state procedure exists in the NVRA. The NVRA unambiguously requires public inspection of all records "concerning" voter list maintenance activities. 52 U.S.C. § 20507(i)(1). Hawaii's eligible Voter File is subject to public inspection because it is the culmination of Hawaii's voter list maintenance activities. Accordingly, the Foundation is statutorily entitled to Hawaii's Voter File. 52 U.S.C. § 20507(i)(1); *see also Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36, 49 (1st Cir. 2024). Once a request for the Voter File is made, Mr. Nago must comply.

Mr. Nago maintains a statewide Voter File. He was requested by the Foundation to produce it. He refused. Instead, he directed the Foundation to request the statewide Voter File in a piecemeal fashion, in county-sized parts from each county clerk, claiming Hawaii's election laws forbade him from producing the statewide Voter File as a whole. *See* Haw. Rev. Stat. §§ 11-14, 11-15, 11-17 and 11-97 and Haw. Code R. § 3-177-160. The NVRA requires no such frolic and detour.

The Foundation sued Mr. Nago under the NVRA for his failure to produce the statewide Voter File. The District Court granted Mr. Nago's motion to dismiss on the grounds that the Foundation's claims were not ripe because it did not make separate requests of each county clerk for a different record, namely that county's portion of the Voter File. ER-29-31. The District Court elevated Hawaii's

procedures over federal law, the NVRA, in ruling the case was not yet ripe because
". . . Plaintiff has not yet requested the data from the four counties pursuant to the
county request forms as is required in the State of Hawai'i." ER-29.

The NVRA requires only one request of the statewide Voter File be made to
Hawaii's chief election officer. Here, that prerequisite request and notice to cure
were properly made to Mr. Nago. The NVRA preempts any Hawaii procedure
which alters these NVRA mandates, and that the District Court erred in dismissing
the case due to a lack of ripeness.

## JURISDICTIONAL STATEMENT

The Foundation brought a three-count complaint alleging violations of the
NVRA. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, because
the action arose under the laws of the United States and because the action sought
declaratory and injunctive relief under the NVRA. This Court has jurisdiction
pursuant to 28 U.S.C. § 1291. The final order dismissing the case was entered
October 31, 2024. This appeal is a from a final order that disposes of all parties'
claims.

## STATUTORY AND REGULATORY AUTHORITIES

The **Public Disclosure** mandate of the NVRA, Section 8(i)(1), reads as
follows:

> Each State shall maintain for at least 2 years and shall make available
> for public inspection and, where available, photocopying at a

3

reasonable cost, *all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters,* except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered, 52 U.S.C. § 20507(i)(1) (emphasis added).

The private right of action under the NVRA reads as follows:

**(b) Private right of action**
(1) A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State.
(2) If the violation is not corrected within 90 days after receipt of the notice under paragraph (1) . . ., the aggrieved person may bring a civil action in an appropriate district for declaratory or injunctive relief with respect to the violation. 52 U.S.C. § 20501(b).

## ISSUES PRESENTED

1.    Did the District Court err in granting Mr. Nago's' motion to dismiss based on ripeness when (1) the Foundation followed the NVRA's prerequisites for obtaining the Voter File; and (2) Mr. Nago possesses the Voter File and can produce it to the Foundation?

2.    Does the NVRA preempt Hawaii's election laws, Haw. Rev. Stat. §§ 11-11, 11-14, 11-17, 11-97, and Haw. Code R. § 3-177-160, which collectively require the Foundation to make piecemeal requests for fractions of the statewide Voter Files to each county clerk?

3.    Does the NVRA preempt Hawaii's administrative rules, Haw. Code R. § 3-177-160, which limit use of the Voter Files to a "government or election" purpose?

4

## STATEMENT OF THE CASE

The NVRA requires public inspection of all records "concerning" voter list maintenance activities. 52 U.S.C. § 20507(i)(1). Hawaii's statewide Voter File, therefore, is subject to full public inspection because it is the culmination of Hawaii's voter list maintenance activities. Even the Trial Court recognized that the Foundation is statutorily entitled to the Voter File.[1]

Mr. Nago misunderstands the NVRA's mandates and the uniform weight of authority against his position. Congress placed maintenance and records-production obligations explicitly on "[e]ach State," 52 U.S.C. § 20507(i)(1). Congress specifically mandated that the Voter File be "maintained and administered at the State level," by each state's designated chief elections officer. 52 U.S.C. § 21083(a)(1)(A) (Help America Vote Act or "HAVA"). There is no dispute that Mr. Nago possesses, maintains, and can reproduce the Voter File. Mr. Nago nevertheless argues he can deny a request for the Voter File and require the public to separately ask each county for its countywide voter list in a piecemeal fashion, then force the requestor to attempt to reassemble the various parts into something approximating the statewide database. Mr. Nago's position is wildly inconsistent with Congress's language and intent. 52 U.S.C § 20507(i)(1). As

---

[1] The District Court dismissed the case only on the basis of ripeness. ER-35.

Hawaii's chief elections officer,[2] Mr. Nago possesses the statewide Voter File and he, as Hawaii's chief election officer, must, by federal law, make it publicly available. He does not have the power under the NVRA to deflect the request onto third parties for this dispute to be ripe.

Congress drafted the NVRA broadly to allow the public to monitor the activities of election official's management of accurate voter rolls. List maintenance is to be transparent. As stated before, Section 8(i)(1) of the NVRA requires: "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, …" 52 U.S.C. § 20507(i)(1). The Voter File falls squarely within this mandate. *Bellows,* 92 F.4th at 46.

Hawaii's state procedures frustrate the transparency and enforcement goals of the NVRA in two ways. First, Hawaii will not produce a single statewide Voter File from its chief elections officer. Rather, requestors are sent on a laborious and expensive frolic and detour to each county's clerk to separately ask for that county's Voter File. Notably, each clerk has broad authority under Hawaii's administrative rules to deny the request. Haw. Rev. Stat. § 3-177-160.

---

[2] HAR. REV. STAT. § 11-2.

Second, requestors are prohibited to use the voter file for any purpose other than government or elections. Haw. Rev. Stat. § 11-97 and Haw. Code R. § 3-177-160.  The Foundation uses Voter Files for research, analysis, commentary, educational, and law compliance purposes. For example, one use is to determine whether all data fields are complete in the file or if the registrant is registered in multiple states.

There is no dispute that the requested statewide Voter File exists. It is maintained at the state level, through the "TotalVote" statewide voter registration system, which was launched in 2015. Haw. Office of Elections, *Final Status Update on the Implementation of Hawaii's New Voter Registration System* (2016) at 6, ER-117-167.[3] Further, Mr. Nago does not dispute that the requested single document exists. One concession was to the Legislature, "Specifically, with the enactment of the [HAVA], the Office of Elections became responsible for implementing a statewide voter registration system for use by the counties." ER-123. Mr. Nago further concedes: "The system was originally built to serve as a statewide database as permitted by state law (i.e., 'voter registration information that is collected and maintained by the clerk of each county may be transmitted to a central file for the purpose of correlating registration data to prevent or detect

---

[3] Available at
https://ags.hawaii.gov/wpcontent/uploads/2012/09/Office_of_Elections_Report_to
the_Legislature_12-27- 2016.pdf (last visited February 18, 2025). ER-113-169.

7

duplicate voter registrations and for the compilation of election reports.')." ER-124. Finally, Mr. Nago informed the Legislature on the new statewide system: "The new statewide voter registration system (TotalVote) was launched on August 3, 2015…." ER-128. Mr. Nago further reports how the new system is housed within the "Hawaii Government Private Cloud." ER-129.

In his report to Hawaii's Legislature, Mr. Nago acknowledges HAVA explicitly mandates he "implement[s], in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State…." ER-125; 52 U.S.C. § 21083(a)(1)(A).

The State's Office of Elections website also acknowledges the statewide Voter File, with a Frequently Asked Questions webpage stating: "Only State and County Election Officials have access to the statewide voter registration database."[4] These public statements corroborate the Foundation's allegations that Mr. Nago does in fact have possession, custody, and control of the statewide Voter File. The NVRA mandates public inspection and copying of all voter list maintenance records, which includes the Voter File.[5] The document requested

---

[4] https://elections.hawaii.gov/voting/election-security/. ER-170.
[5] In his official report to the Members of Hawaii's Legislature, Mr. Nago discussed in detail the development of the "Mainframe Statewide Voter Registration System"

exists. Mr. Nago just refuses to make the statewide Voter File publicly available.

On April 6, 2023, the Foundation requested from Mr. Nago a copy of Hawaii's Voter File pursuant to the NVRA's Public Disclosure Provision. ER-259. Mr. Nago denied the Foundation's request, telling the Foundation to redirect such inquiries to Hawaii's respective County Elections Divisions. ER-179; ER-270-277.[6]

Contrary to the NVRA, under Hawaii's election laws, only persons demonstrating approved "election or government purposes" may receive the full Voter File. Haw. Rev. Stat. § 11-97(d).[7] Requestors with a different purpose —like the Foundation—may receive only "[a] voter's full name, district/precinct designation, and voter status…." *Id*. This restriction conflicts with the NVRA's Public Disclosure Provision, which requires states to make "all" voter list maintenance records available for "public inspection," 52 U.S.C. § 20507(i)(1), and places no restrictions of such records' use.

---

and the State's requirements under both the HAVA and the NVRA to create and maintain a statewide voter list. Id. at pp. 2–6. He further informed the Legislature how Hawaii would comply with those federal statutes and use the $4 million in federal funds given to Hawaii to implement the "Total Vote" statewide voter registration system.

[6] Mr. Nago admits to receiving and responding to the Foundation's request letter. ER-179.

[7] True and correct copies of each county's required affidavit are attached to Mr. Nago's Memorandum, ER-210-121; ER-213-218; ER-219-227; ER-228-232, and verified by Attorney Schulander's Declaration, ER-199-202.

On September 21, 2023—168 days after requesting the Voter File— the Foundation filed this action to compel production as required by the NVRA. The Foundation filed an amended complaint on September 22, 2023. ER-239-281. On November 28, 2023, Mr. Nago moved to dismiss the Amended Complaint or, in the alternative, moved for summary judgment. ER-175-177. On June 28, 2024, the trial court granted Mr. Nago's motion to dismiss for the reason the Foundation had not made requests to the county clerks and the injury was not yet ripe. ER-16-37.

## SUMMARY OF THE ARGUMENT

The overwhelming weight of authority supports reversal. The Foundation made a written request under the NRVA to Hawaii's designated chief election officer, Mr. Nago, for the state's Voter File. Mr. Nago possesses the Voter File and could have produced it. Instead, he denied the request. The Foundation sent Mr. Nago notice of its intent to sue and offered Mr. Nago the statutory time to cure. When Mr. Nago did not cure the defect under the NVRA by producing the statewide Voter File, the Foundation sued. 52 U.S.C. § 20510(b).

Mr. Nago's denial created a cognizable injury and a ripe controversy under the NVRA. Hawaii procedures cannot impair public disclosure rights. It is well settled that the NVRA preempts Hawaii's procedures that restrict the manner of inspecting the statewide Voter Roll. The District Court erred when it held the Foundation's NVRA claims were not ripe.

10

## STANDARD OF REVIEW

This Court reviews dismissal for lack of ripeness de novo. *Twitter, Inc. v. Paxton,* 56 F.4th 1170, 1173 (9th Cir. 2022); *Pizzuto v. Tewalt*, 997 F.3d 893 (9th Cir. 2021); *Dodd v. Hood River County*, 59 F.3d 852, 857 (9th Cir. 1995).

## ARGUMENT

### I.     The Foundation Has Standing.

The Ninth Circuit holds that failure to provide statutorily required information creates an Article III injury to private plaintiffs. When a statute provides a right to information, the depravation of which leads to an "informational harm," and violation of the statute gives rise to a cognizable, Article III, "informational injury." *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F. 4th 826, 833 (9th Cir. 2021).

More specifically, the Foundation alleged multiple adverse impacts caused by its informational injuries—among them, the inability to do the very things Congress envisioned when it passed the NVRA: monitor and scrutinize Hawaii's voter list maintenance program. *See Bellows,* 92 F. 4th at p. 52–54.

Mr. Nago contended that no informational deprivation occurred because he directed the Foundation to the respective county clerks. The NVRA does not permit such a deflection of statutory obligations to third parties to defeat or impair that disclosure obligation. Mr. Nago has possession, custody, and control of the

11

precise, requested record: a statewide Voter File. Haw. Rev. Stat. § 11-2. County officials do not possess a statewide Voter File.

Additionally, Hawaii's statutory requirement of demonstrating approved "election or governmental purposes"[8] as a prerequisite to obtain such information violates the NVRA, which calls for public inspection without qualification whatsoever. *Bellows,* 92 F. 4th at 53–54. By denying the Foundation access to the Voter File, Mr. Nago is "refus[ing] to permit [the Foundation] to scrutinize [Hawaii's] activities to the extent the [NVRA] allows. *Public Citizen v. United States Department of Justice*, 491 U.S. 440, 499 (1989).

The Informational Injury Doctrine the Foundation asserted is decades old. In *Public Citizen,* the Supreme Court held, in public-records cases, a plaintiff does not "need [to] show more than that they sought and were denied specific agency records" to have standing. *Id*. at 449. There, the plaintiff sought records pursuant to the Federal Advisory Committee Act ("FACA"). The Supreme Court held that FACA created a public right to information by requiring advisory committees to the executive branch of the federal government to make available to the public its minutes and records, with some exceptions. *Id*. at 446–47. The defendant in *Public Citizen*, as in this case, asserted that the plaintiff did not "allege [an] injury sufficiently concrete and specific to confer standing." *Id*. at 448. The Supreme

---

[8] HAW. REV. STAT. §§ 11-11, 11-15, 11-97 and HAW. CODE R. § 3-177-160.

12

Court "reject[ed] these arguments." *Id.* at 449.

> As when an agency denies requests for information under the Freedom of Information Act, the refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitute a sufficiently distinct injury to provide standing to sue. *Id.*

In other words, the inability to "scrutinize" the activities of government "constitutes a sufficiently distinct injury." *Id.* The Supreme Court reaffirmed the holding of *Public Citizen* in *FEC v. Akins*, 524 U.S. 11, 21 (1998), explaining, "a person suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id.* at 21.

The Ninth Circuit has also long recognized that failure to provide information as required by a statute creates an Article III injury. *Inland Empire,* supra, at 833. *See also Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F. 3d 411, 419–420 (9th Cir. 2020) (finding informational injury when a tribal health foundation challenged amendments to a tribal health consortium's amendment to its code of conduct).

Federal courts have consistently relied on the Supreme Court decisions supporting informational injuries to find that requestors have standing to compel production of records under the NVRA. *E.g. Pub. Int. Legal Found., v. Bellows*, 92 F. 4th 36, 54–55 (1st Cir. 2024); *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 702 (E.D. Va. 2010); *Pub. Int. Legal Found. v. Bennett*, No. H-18-0981, 2019 U.S. LEXIS 39723, at *8–*10 (S.D. Tex. Feb. 6, 2019) (denying

motion to dismiss), adopted by *Pub. Int. Legal Found., Inc. v. Bennett*, No 4:18-cv-00981, 2019 U.S. Dist. LEXIS 38686 (S.D. Tex., Mar. 11, 2019); *Judicial Watch, Inc. v. King*, 993 F .Supp. 2d 919, 923 (S.D. Ind. 2012).

Here, there is an informational injury, as the NVRA provides a right to inspect "all" voter list maintenance records and Mr. Nago's refusal to provide the Voter Files has resulted in cognizable informational harms and impediments to the Foundation's organizational mission.

## II.    The Facts Supporting Ripeness Are Not Disputed.

The seminal issue in this case is when is a claim under the National Voter Registration Act, 52 U.S.C. § 20507(i)(1) ("NVRA") to produce a statewide voter list ("Voter File") to the Foundation ripe. The trial court's order (ER-17-19) correctly recites the sequence of requests from the Foundation and responses from Mr. Nago:

> On April 6, 2023, Plaintiff's research director Logan Churchwell ("Churchwell") emailed Defendant a letter requesting an opportunity to inspect or review a copy of the complete voter registration system data in Hawaii' ("voter data") containing all voter fields, citing 52 U.S.C. § 20507(i). [Amended Complaint, Exh. A (letter from Churchwell to Defendant, dated 4/6/23) ("April 6 Letter").] On May 8, 2023, Defendant's office responded and directed Churchwell to contact the
>      County Elections Division. Churchwell replied the same day, asking if the County Elections Division is the only office that maintains the record, or if the Defendant's office also maintains a master copy. Defendant's office replied again on May 10, 2023, directing Churchwell to contact the County Election Division. [*Id.*, Exh. B (emails between Churchwell and the Defendant's office, dated from 4/6/23 to 5/10/23).]

14

On May 17, 2023, Churchwell wrote Defendant a letter stating Defendant's office's actions violated the NVRA. [Id., Exh. C (letter from Plaintiff to Defendant, dated 5/17/23) ("May 17 Letter").] On June 28, 2023, Defendant's General Counsel, Aaron H. Schulaner ("Schulaner") wrote Churchwell a letter disagreeing with Churchwell's legal interpretation of Defendant's obligations under the NVRA, and again referring Churchwell to the county clerks. [*Id.*, Exh. D (letter from Schulaner to Plaintiff, dated 6/28/23).] ER-17-18

The trial court concludes that "more than ninety days elapsed between May 17, 2023 [the date of the Foundation's NVRA notice letter] and the filing of the complaint… Therefore, Plaintiff possesses statutory standing." ER-27.

### III.   The Foundation's Claims Are Ripe.

The trial court was incorrect when it held that the Foundation must submit the state-prescribed request form to each county clerk and be denied before the Foundation is injured. ER-28-31. This is where the trial court confused standing (an informational injury) with ripeness (perfecting a claim under the NVRA). The Foundation alleged and Mr. Nago did not dispute that the Foundation requested the Voter File from Mr. Nago. The Foundation alleged, and Mr. Nago did not dispute that he has not produced the Voter File. The Foundation alleged, and Mr. Nago did not dispute, that Hawaii law does not permit the Foundation's intended activities. As explained earlier, these allegations give rise to a concrete informational Article III injury (standing).

The injury became ripe under the statutory terms of the NVRA, namely

15

ninety days after Mr. Nago received the Foundation's NVRA notice letter of May 17, 2023, just as the Foundation alleged. ER-245-246. Mr. Nago does not dispute having received the NVRA notice letter. ER-179; ER-185-186. Mr. Nago's argument that a requester needs to comply with Hawaii's law and regulations, in addition to the notice requirements in the NVRA, sounds much like the arguments Maine made but were flat rejected by the First Circuit in *Bellows*. *Bellows*, 92 F. 4th at 53–55 (finding the NVRA preempts Maine's use and publication bans).

This case is ripe simply because Mr. Nago failed to produce the statewide Voter File to the Foundation within ninety days of his receipt of the May 17, 2023, notice letter. The trial court made a fatal error by attaching state requirements to the requirements Congress passed in the NVRA.

## IV.   The NVRA Preempts Hawaii's Election Laws.

Any state procedure that adds to or conflicts with NVRA rights or procedures are invalid. The Supreme Court has held the NVRA is a "complex superstructure of federal regulation atop state voter-registration systems." *Arizona v. Inter Tribal Council of Arizona,* 570 U.S. 1, 5 (2013). The NVRA was passed pursuant to the Constitution's Election Clause, which vests Congress with the farthest frontier of federal power over state procedures. U.S. Const. art. I § 4, cl.1; *see also Bellows,* 92 F. 4th at 52. Upon the States, the Elections Clause "imposes the duty ('shall be prescribed'), to prescribe the time, place and manner of electing

16

Representatives and Senators; upon Congress it confers the power to alter those

regulations or supplant them altogether." *Inter Tribal,* 570 U.S. at 8. The Elections

Clause "substantive scope is broad," and includes "regulations relating to

registration." *Id.* at 8–9. Under the Elections Clause, statutes like the NVRA must

be read "simply to mean what is said." *Id.* at 15.

> The power of Congress over the "Time, Place and Manner" of
> congressional elections "is paramount, and may be exercised at any
> time, and to any extent which it deems expedient; and so far as it is
> exercised, and no farther, the regulations effected supersede those of
> the State which are inconsistent therewith.

*Inter Tribal*, 570 U.S. at 9 (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1880)). In

*Inter Tribal*, the Supreme Court held that the NVRA is superior to any conflicting

state laws. In such situations, "the state law, 'so far as the conflict extend, ceases to

be operative.'" *Inter Tribal,* 570 U.S. at 9 (quoting *Ex parte Siebold*, 100 U.S. at

384). Mr. Nago cannot overcome the gravity of this jurisprudence here.

Other courts have uniformly rejected Mr. Nago's position here. The First

Court of Appeals in *Bellows* made this point explicitly clear when it reasoned:

> As stated by Congress, the purposes of the NVRA are "to establish
> procedures that will increase the number of eligible citizens who
> register to vote in elections for Federal office," "to make it possible for
> Federal, State, and local governments to implement this chapter in a
> manner that enhances participation of eligible citizens as voters in
> elections for Federal office," "to protect the integrity of the electoral
> process; and . . . to ensure that accurate and current voter registration
> rolls are maintained." 52 U.S.C. § 20501(b)(1)–(4). To further these
> purposes, Congress created Section 8(i)(1) along with a private right of
> action for members of the public to enforce the provision's disclosure

17

mandate. 52 U.S.C. §§ 20507, 20510(b). Thus, it is of no surprise that the NVRA "embodies Congress' conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to chicanery, oversights, or inefficiencies." *Project Vote*, 682 F. 3d at 334–35. And Maine may not "condition[] that right . . . upon compliance with a rule . . . [that] is inconsistent in both purpose and effect with the remedial objectives of the NVRA. Cf. *Felder v. Casey*, 487 U.S. 131, 153, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988).

*Bellows*, 92 F. 4ᵗʰ at 52-53.

Even Hawaii's regulations allow for federal preemption. The Hawaii Administrative Code specifically states that the NVRA takes precedent over Hawaii's election laws:

Section 3-177-51 – Construction of laws

Chapter 1. Hawaii Revised Statutes, consisting of Haw. Rev. Stat. §§ 1-1 through 1-32, may be consulted in the construction of all statutes and administrative rules. If the chief election officer or a court of competent jurisdiction determines there is a conflict between these rules, and the provisions of federal law, such as the Voter Rights Act of 1965, **National Voter Registration Act** of 1993, **Help America Vote Act** of 2002, the provisions of the federal law shall control, and the chief election officer or the clerk, as may be applicable under state law, shall perform the duties and discharge the obligations contained in the federal act.

HAR § 3-177-51 (Emphasis added).

## A. The NVRA Preempts Hawaii's Piecemeal Production of its Statewide Voter File.

Federal law mandated the creation of the document requested here. The Help America Vote Act, 52 U.S.C. § 21083 ("HAVA") provides that Hawaii must

18

"implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the state…" 52 U.S.C. § 21083(a)(1)(A). Congress expressly addresses who maintains and, therefore, must produce the Voter File. In Hawaii, that is the responsibility of Hawaii's chief election officer. Haw. Rev. Stat. § 11-2. Mr. Nago does, in fact, maintain and possess the Voter File.

Hawaii's deflection of this obligation to counties is invalid under the conflict preemption doctrine, which occurs where "the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc. v Learjet, Inc*., 575 U.S. 373, 377 (2015) (citations and quotations omitted). The NVRA requires the chief election officer in each state to produce the statewide Voter File. It is a duty and task under the NVRA which is explicitly non-delegable.

Exercising the right to inspect the Voter File in Hawaii is a burdensome process, and Mr. Nago makes it more so. Although the statewide Voter File is maintained at the state level, Mr. Nago incorrectly persuaded the trial court to hold that NVRA requestors must contact—or personally visit—four different county offices to collect each county's piece of the Voter File. Hawaii thus makes

19

exercising federal rights four times harder.[9] Congress did not require this frolic and detour. Here, state procedures must yield. *See, e.g.*, *Judicial Watch, Inc. v Lamone*, 399 F. Supp. 3d 425, 445 (D. Md. 2019) (finding state law that restricted access to Maryland's registered voters was preempted by the NVRA because it "exclude[d] organizations and citizens of other states from identifying error and fraud" and, therefore, "undermines Section 8(i)'s efficacy").

### B. The NVRA Preempts Hawaii's Use Restrictions.

Not only has Hawaii impermissibly created state procedural obstacles to obtain records under the NVRA, Hawaii places use restrictions that flat conflicts with federal law. A member of the public may not receive Hawaii's Voter File unless they have an approved "election or governmental purpose." Haw. Rev. Stat. § 11-97. Hawaii Administrative Rule 3-177-160(e) provides six approved purposes, none of which includes the Foundation's intended activities – namely, "research, analysis, law enforcement, education and commentary." ER-242-243. On its face Hawaii Administrative Rule 3-177-160(e) excludes the Foundation's activities and denies the Foundation access under Hawaii Revised Statute § 11-97.

---

[9] If every state adopted the same requirement to request the voter roll from each county, it would be impossible to enforce the NVRA's public disclosure provision. Texas has 254 counties. California has 58. New York has 62. It is not possible for the public to amalgamate states' voter rolls in such a piecemeal fashion to create a version of the state document. Such an absurd result is plainly contrary to Congress's mandate of a centralized voter file possessed by a single state election officer.

This conflicts with the express purpose of the NVRA.

The Foundation's activities are precisely the activities Congress encouraged when it passed the NVRA. Yet, Hawaii prevents the Foundation from using the Voter File to engage in these activities. As in *Bellows,* 92. F. 4th at 53-56, Hawaii Revised Statute § 11-97 and Hawaii Administrative Rule 3-177-160(e) pose impermissible obstacles to the NVRA's objectives and are, therefore, invalid and unenforceable.

The trial court, therefore, erred in failing to rule Hawaii's statutes and regulations were preempted when ruling that the Foundation's claims were not ripe. The Foundation was never required to make individual county requests and try to cobble together a statewide voter file. In short, the Foundation's claims were ripe ninety days after it gave written notice to Mr. Nago.

## CONCLUSION

For the forgoing reasons, the Foundation prays this court reverse the decision of the trial court on ripeness and remand the case to the trial court for consideration of the case on the merits and grant any other relief to which the Foundation may be entitled.

Date: February 21, 2025

*/s/ Joseph M Nixon*
Joseph M. Nixon (Texas Bar #15244800)
(Federal Bar #1319)
Noel H. Johnson
(Wisconsin Bar #1068004)
Maureen Riordan* (New York Bar # 2058840)
Public Interest Legal Foundation, Inc.
107 S. West Street Suite 700
Alexandria, Virginia 22314
Tel: (703) 745-5870
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
mriordan@PublicInterestLegal.org
jnixon@publicinterestlegal.org
*Motion application for admission
forthcoming

*Attorneys for Appellant Public Interest Legal
Foundation*

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)**      __24-6629__

The undersigned attorney or self-represented party states the following:


[X ] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** /s/ Joseph M. Nixon_____ **Date** Feb 21, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | Public Interest Legal Foundation, Inc. v. Nago

I am the attorney or self-represented party.

**This brief contains** | 5,065 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Joseph M Nixon | **Date** | 2/21/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

# CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2025, I electronically filed the

foregoing using the Court's ECF system, which will serve this response on all

parties.

 /s/ Joseph M. Nixon
Joseph M. Nixon
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
jnixon@publicinterestlegal.org